John W. KRAUS, Jr., Individually and as Next Friend of his Minor Son, John L. Kraus, and Fred Petty and Wife Letty Petty, Appellants,

v.

The ALAMO NATIONAL BANK OF SAN ANTONIO and Kelly Salvage Company, Inc. V. John W. Kraus, Individually and as Next Friend of his Minor Son John L. Kraus, Appellees.

No. 5967.

Court of Civil Appeals of Texas, Waco.

Aug. 9, 1979.

Rehearing Denied Sept. 13, 1979.

Fred A. Semaan, Goodstein & Semaan, Sam C. Bashara, Law Offices of Sam C. Bashara, San Antonio, for appellants.

Jack Hebdon and Thomas H. Crofts, Jr., Groce, Locke & Hebdon, F. W. Baker, Matthews, Nowlin, Macfarlane & Barrett, R. H. Mercer, House, Mercer & House, San Antonio, for appellees.

## OPINION

McDONALD, Chief Justice.

This is a personal injury and wrongful death action. John W. Kraus, Jr., individu-

ally and as next friend of his minor son John L. Kraus, and Fred and Letty Petty, the surviving heirs of Nancy Marie Kraus, sued Alamo National Bank of San Antonio and its Independent Contractor, Kelly Salvage Company, Inc., for actual and exemplary damages for Mrs. Kraus' death and personal injuries to her son John L. Kraus, resulting from the collapse of a wall of the Old Household Furniture Store building owned by Alamo National Bank and being demolished by Kelly Salvage Company.

Trial was to a jury which found:

1) Defendant Kelly Salvage Company was negligent in its demolition of the Old Household Furniture Store building.

2) Such negligence was a proximate cause of the occurrence in question.

3) Kelly Salvage Company acted with gross negligence in demolishing the Old Household Furniture Store building.

4) Such gross negligence was a proximate cause of the occurrence in question.

5) Jack Kraus[1] should be awarded $500,000; and John L. Kraus $500,-000; against Kelly Salvage Company as exemplary damages for the death of Nancy Marie Kraus.

6) "Do you find from a preponderance of the evidence that the demolition of the Old Household Furniture Store building was inherently dangerous work?

"Inherently Dangerous Work means that the nature of the work itself, or of the instrumentalities which must necessarily be used in doing the work, if unskillfully or carelessly done or used, involves a grave risk of serious bodily harm or death.

ANSWER: We do"

7) Alamo National Bank knew, contemplated, had reason to know, or had reason to contemplate that the demolition of the Old Household Furniture Store building was inherently dangerous work when it hired Kelly Salvage Company.

8) Alamo National Bank was negligent in connection with the demolition of the Old Household Furniture Store building.

9) Such negligence was a proximate cause of the occurrence in question.

10) Alamo National Bank acted with gross negligence in connection with the demolition of the Old Household Furniture Store building.

11) Such gross negligence was a proximate cause of the occurrence in question.

12) Jack Kraus[1] should be awarded $500,000; and John L. Kraus $500,-000; against Alamo National Bank as exemplary damages for the death of Nancy Marie Kraus.

13) Jack Kraus[1] should be awarded $20,-000; John L. Kraus $200,000; Fred Petty $5,000; and Letty Petty $5,000. for their loss resulting from the death of Nancy Marie Kraus.

14) John L. Kraus should be awarded $25,000. for pain and suffering, and $1,000. for loss of past physical ability, resulting from the occurrence in question.

The trial court in its judgment found that Kelly Salvage Company was an independent contractor, and that there is no evidence that the demolition of the Old Household Furniture Store building would result in probable injury or death notwithstanding how skillfully or carefully the work may be done; rendered judgment on the verdict against Kelly Salvage Company for: John W. Kraus, Jr., $25,803.46[2] compensatory damages, and $500,000. punitive damages; John L. Kraus, $226,000. compensatory damages, and $500,000. punitive damages; Fred Petty $5,000; and Letty Petty $5,000.

The trial court decreed plaintiffs take nothing against Alamo National Bank.

---

1. The same as John W. Kraus, Jr.

2. The jury's award plus agreed medical and funeral bills of Nancy Marie Kraus.

Plaintiffs appeal from that portion of the judgment which decreed plaintiffs take nothing against the Bank.

Defendant Kelly Salvage appeals from that portion of the judgment which awards exemplary damages against it.

Defendant Alamo National Bank seeks affirmance of the take-nothing judgment against it; and alternatively asserts cross points seeking a reversal and remand.

The Alamo National Bank owned the Old Household Furniture Store building located across the street from the Bank in downtown San Antonio. The Bank contracted with Kelly Salvage Company to demolish the building. On September 14, 1976, some 22 days after the contracted completion date, Kelly was still in process of razing the building, when around 5 PM the west wall of the building collapsed on a car driven by Nancy Marie Kraus, killing her and injuring her minor son John L. Kraus, who was a passenger in the car.

At the time the wall fell in all steel support running to the wall had been removed by Kelly. Further the structure was not demolished a story at a time. Several witnesses testified the building was leaning toward St. Mary's Street at least four hours before the accident. At approximately 12 noon Benton Davies advised Ms. Keller an assistant vice president of the Bank that the west wall was leaning toward St. Mary's Street and constituted a dangerous condition.

This information was immediately relayed by Ms. Keller to Bradford Breuer, Vice President of the Bank charged with the responsibility for dealing with the demolition operation. Breuer took no action whatsoever and did nothing about the information.

### Plaintiffs' Appeal Against The Bank

Point 1 asserts the trial court erred in failing to find the demolition of the Old Household Furniture Store building was inherently dangerous as a matter of law. ■ The question is whether the demolition of a three-story building located in a public area and adjacent to heavily travelled streets is inherently dangerous as a matter of law. In such situation the Supreme Court of Ohio in *Covington & Cincinnati Bridge Co. v. Steinbrock*, 61 Ohio St. 215, 55 N.E. 618, and the Court of Appeals of New York in *Hanley v. Central Sav. Bank*, 255 A.D. 542, 8 N.Y.S.2d 371 have held such demolition inherently dangerous as a matter of law. The Supreme Court of Washington in *Amann v. City of Tacoma*, 170 Wash. 296, 16 P.2d 601 holds to the contrary. The precise question has not been passed on in Texas.

We think whether demolition of the building here to be inherently dangerous depends on the facts in the case. Point 1 is overruled.

■ Point 2 asserts the trial court erred in disregarding Special Issue 6. In special issue 6 the jury found that demolition of the Old Household Furniture Store building was inherently dangerous. The witness Dokell, a demolition expert, testified that there is inherent danger in any type of demolition; that inherent danger means that danger exists within that which is to be done; that there is a certain risk element that would be greater than many other things; that there is no way anyone can demolish anything and say they're never going to do anything wrong, or nothing's going to happen. The witness Villaire, a safety expert, testified that the demolition of a multistory building in an urban area is an inherently dangerous work. The evidence is ample to sustain the finding.

Alamo Bank asserts the trial court correctly disregarded Issue 6 because plaintiffs failed to request a substantially correct definition of "inherently dangerous" thereby waiving that ground of recovery.

■ The trial court submitted the following definition:

"Inherently Dangerous Work means that the nature of the work itself, or of the instrumentalities which must necessarily be used in doing the work, if unskillfully and carelessly done or used, involves a grave risk of serious bodily harm or death".

Alamo objected to such definition and proposed the following definition which was refused by the trial court.

"Inherently dangerous work is work which, however skillfully performed, creates a peril, unless guarded against. If the work to be done may be safely done in the exercise of due care, although in the absence of such care injurious consequences to third persons would be likely to result, then such work is not inherently dangerous".

■ We think under the record the definition submitted by the trial court substantially correct; and in any event harmless under Rule 434 TRCP; and that the trial court erred in disregarding Issue 6.

In this situation, Alamo is liable for compensatory damages by employing an independent contractor to undertake an inherently dangerous task, and liability flows to Alamo in the same manner as it would in the master-servant situation. *Cameron Mill & Elevator Co. v. Anderson*, 98 Tex. 156, 81 S.W. 282; *Loyd v. Herrington*, 143 Tex. 135, 182 S.W.2d 1003; *Gragg v. Allen*, Tex.Civ. App. (Waco) NWH, 481 S.W.2d 452. Alamo however is not liable for punitive damages assessed against Kelly Salvage. *Fisher v. Carrousel Motor Hotel, Inc.*, Tex., 424 S.W.2d 627; *King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403. Point 2 is sustained.

Point 3 asserts the trial court erred in not entering judgment for plaintiffs against Alamo National Bank for actual damages, based on the negligence findings.

The west wall of the Old Household Furniture Store building was leaning toward St. Mary's Street, creating a substantial risk of injury to the public using the thoroughfare, which was adjacent to and adjoined the building. The witness Villaire saw the wall leaning several days before the accident, notified the City of San Antonio, and notified Paul Thompson of the news media. Villaire testified he stated that if something was not done the wall was going to collapse. TV in San Antonio carried the story and Villaire was interviewed about the matter over TV by Thompson. A number of other witnesses

observed that the wall was leaning; and one of these, Benton Davies, observed the condition at about 12 noon on the day the wall collapsed at about 5 PM; went into the Bank and told Ms. Keller, an officer of the Bank, that the wall was leaning and constituted a dangerous condition; Ms. Keller immediately relayed the information to the Bank's Vice President in charge of the demolition project; no action of any sort was taken. The wall fell into the street about 5 hours later killing Mrs. Kraus and injuring her son John L. Kraus.

The jury in Issue 8 found that the Bank was negligent in connection with the demolition of the Old Household Furniture Store building, and in Issue 9 found that such negligence was a proximate cause of the occurrence.

■ Alamo Bank, as the owner of the Old Household Furniture Store property, was under obligation and duty to exercise ordinary care in the use of its property to avoid injuring others on adjoining property including the public streets adjacent to the building. *Atchison v. Texas & P. Ry. Co.*, 143 Tex. 466, 186 S.W.2d 228; *City of Fort Worth v. Lee*, 143 Tex. 551, 186 S.W.2d 954; *Skelly Oil Co. v. Johnston*, Tex.Civ.App. (Amarillo) Er.Ref., 151 S.W.2d 863; *Atchison, T. & S.F. Ry. Co. v. Smith*, Tex.Civ. App. (Waco) NRE, 563 S.W.2d 660, 669. Such duty is nondelegable and remains constant even if the owner employs an independent contractor as here. *Kampmann v. Rothwell*, 101 Tex. 535, 109 S.W. 1089; *Randle v. Naugle*, Tex.Civ.App. (El Paso) NWH 299 S.W. 297.

The Restatement (Second) of Torts, Sec. 414A p. 388 expresses the rule thusly:

"A possessor of land who has employed or permitted an independent contractor to do work on the land, and knows or has reason to know that the activities of the contractor or conditions created by him involve an unreasonable risk of physical harm to those outside of the land, is subject to liability to them for such harm if he fails to exercise reasonable care to protect them against it".

The trial court should have rendered judgment against Alamo National Bank for plaintiffs actual damages based on Issues 8 and 9. Point 3 is sustained.

Point 4 asserts the trial court erred in failing to render judgment for plaintiffs against Alamo National Bank for exemplary damages.

There is evidence the wall which fell was allowed to stand unsupported, leaning toward St. Mary's Street for some two weeks. Many persons observed the wall leaning. There was an interview over TV as to the leaning wall and the dangerous condition which it posed. The Bank was located directly across the street from the building which fell. Some five hours before the wall fell the Vice President of the Bank in charge of the demolition project was expressly warned of the leaning wall and the dangerous situation which it presented; yet the Bank did absolutely nothing to protect the safety of the travellers on the street or to block off the street.

The jury found in Issue 10 the Bank acted with gross negligence in connection with the demolition of the building; in Issue 11 that such was a proximate cause of the occurrence; and in Issue 12, that Jack Kraus should be awarded $500,000. and John L. Kraus $500,000. in exemplary damages against the Bank.

Gross negligence is that entire want of care which would raise the reasonable belief that the act or omission complained of was a result of conscious indifference to the rights or welfare of the person or persons to be affected by it. *Sheffield Div., Armco Steel Corp. v. Jones*, Tex., 376 S.W.2d 825.

We think the jury authorized to find as they did, and Point 4 is sustained.

### Kelly Salvage Company's Appeal

Kelly Salvage Company appeals from the judgment in favor of plaintiffs against it for exemplary damages asserting: 1) There is no evidence Kelly acted with gross negligence; 2) The trial court erred in not disregarding Issues 3 and 4; and 3) The trial court erred in rendering judgment against it for exemplary damages because as a matter of law Kelly acted with some degree of care which precludes any reasonable belief the act or omission complained of was the result of conscious indifference.

There is evidence from which the jury could conclude that Kelly's owner and chief supervising officer at the demolition site wilfully ignored four major Occupational Safety and Health Administration (OSHA) regulations concerning the demolition of multistory buildings in urban areas; viz. the failure to obtain an engineering survey; the failure to demolish the building one story at a time; the cutting of load support members; and the failure to laterally brace the west wall of the building. There is evidence that the entire demolition procedure from the outset was unsafe; and that it was grossly reckless to remove all supports from a free-standing three-story wall. And the building was located in the busiest part of downtown San Antonio where hundreds of automobiles and pedestrians passed the location each hour.

The wall leaned for some two weeks before it fell; the matter was aired over TV; and numerous people saw the wall leaning.

We think the jury authorized to conclude that a complete lack of care was exercised by Kelly which evidenced a total conscious indifference to the welfare of persons using the street and sidewalk adjacent to the building.

All of Kelly's points are overruled.

### Alamo National Bank's Cross Points

Alamo National Bank's cross point 1) asserts: The jury's award of exemplary damages to John W. Kraus, Jr., is excessive and disproportionate to the actual damages awarded. Kraus was awarded actual damages of $25,803.46 and exemplary damages of $500,000. against the Bank.

While the amount of exemplary damages should be reasonably proportional to the actual damages, no set rule or ratio can be laid down, and such amount must depend upon the facts in the particular

case. Such amount depends, among other things, upon the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety.

■ *Cain v. Fontana*, Tex.Civ.App. (San Antonio) NRE, 423 S.W.2d 134. And the question of the measure of exemplary damages comes under the general rule that, where the law furnishes no legal measure of damages and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is a result of passion, prejudice, or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal. *Tynberg v. Cohen*, 76 Tex. 409, 13 S.W. 315; *Bond v. Duren*, Tex.Civ. App. (Waco) NRE, 520 S.W.2d 460.

Counterpoint 2 asserts the trial court erred in failing to submit a special issue on comparative negligence (as between the Bank and Kelly).

Under the facts of this case this cross point is immaterial.

Cross point 3 asserts the trial court erred in admitting into evidence Occupational Safety and Health Act (OSHA) regulations, because plaintiffs and their decedent were not with within the class of persons protected by the act.

■ Employees are the exclusive class of persons protected by OSHA regulations.

■ Nevertheless OSHA regulations are admissible into evidence as being relevant to the standards of conduct which should have been employed by a defendant.

*Knight v. Burns, Kirkley & Williams Constr. Co., Inc.*, Ala., 331 So.2d 651; *Dunn v. Brimer*, 259 Ark. 855, 537 S.W.2d 164; *Disabatino Bros., Inc. v. Baio*, Del., 366 A.2d 508; *Marshall v. Isthmian Lines*, 5th Cir., 334 F.2d 131.

*Dunn*, supra, quoting Prosser, Torts, p. 202 (4th Ed.1971) states "where the statute does set up standard precautions, although only for the protection of a different class of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances, which the jury should be permitted to consider".

All of Alamo National Bank's cross points have been considered and are overruled.

The judgment of the trial court is reformed: (1) to set aside the degree plaintiffs take nothing against Alamo National Bank of San Antonio; (2) to decree plaintiffs recover all compensatory damages awarded by the jury, jointly and severally against defendants Kelly Salvage Company, Inc. and Alamo National Bank of San Antonio, with interest thereon at 9% per annum from May 3, 1978; (3) to decree John W. Kraus, Jr. recover $500,000. punitive damages against Alamo National Bank of San Antonio with interest thereon at 9% per annum from May 3, 1978; (4) to decree John W. Kraus, Jr. as next friend of his minor son John L. Kraus recover $500,000. punitive damages against Alamo National Bank of San Antonio, with interest thereon at 9% per annum from May 3, 1978; (5) to decree all costs of court herein are taxed ½ each against defendants Kelly Salvage Company, Inc. and Alamo National Bank of San Antonio. In all other respects the judgment is affirmed.

REFORMED AND AFFIRMED.